UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| Eddie Thomas, | Case No.: 2:24-cv-00345-APG-MDC |
|---|---|
| Plaintiff | **Order Dismissing Complaint with Leave to Amend** |
| v. | |
| Aaron Harroun, et al., | |
| Defendants | |

Plaintiff Eddie Thomas, who is incarcerated in the custody of the Nevada Department of Corrections (NDOC) at Southern Desert Correctional Center, has submitted a civil rights complaint under 42 U.S.C. § 1983 and an application to proceed *in forma pauperis*. ECF Nos. 1, 1-1. I will temporarily defer the matter of the filing fee. I now screen the complaint under 28 U.S.C. § 1915A.

**I.     SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a).  The court must identify any cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2).  *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires a federal court to dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II. SCREENING OF COMPLAINT**

Thomas sues six Lovelock Correctional Center (LCC) staff: shift commander Lt. Aaron Harroun, classification committee member Donald Southworth, shift commander Sgt. Craig Molnair, nurse Jane Doe, and correctional officer John Doe.[1] ECF No. 1-1 at 2-3. He brings three claims and seeks declaratory relief and monetary damages.

/ / / /

---

[1] The use of "Doe" to identify a defendant is not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Id*. If the true identity of any of the Doe Defendants comes to light during discovery, Thomas may move to substitute their true names to assert claims against them at that time.

Thomas alleges the following. On the morning of May 18, 2023, he had terrible back pain. Instead of calling for man-down, the LCC unit officer told him to go the infirmary. Another inmate helped him to the infirmary. The unit officer hadn't informed the medical staff that he sent Thomas. Again instead of calling man down, the nurse sent Thomas back to his unit. He tried but was not able to make it back to his unit. He spoke with Sgt. Martin in the operation headquarters, who told him he had to go back to his unit and file an emergency grievance. Thomas again explained that he could not make it back on his own. Sgt. Martin disappeared, and Lt. Harroun appeared. Thomas told him the situation; Harroun said he could not help him and ordered him back to the unit. Thomas again tried to explain that he could not make it back. Harroun ordered Thomas to place his hands behind his back. Thomas said he was not resisting, but he was physically unable to comply. Officers rushed him, tackling him and taking him to the floor. They placed knees on his back, handcuffed him, placed him in a restraint chair and took him to the infirmary. During the incident, Thomas repeatedly asked them to preserve surveillance footage that showed the fellow inmate helping him get to the infirmary. Sgt. Molnair was the shift commanding officer that day. Thomas returned to his unit later in the morning. Molnair knew Thomas suffered from chronic back pain, but didn't allow him to receive a mattress until the shift ended about 8:00 p.m. At his disciplinary proceedings, Southworth didn't allow Thomas to present video footage evidence, telling him that there was no footage. Thomas was placed in segregation from May 18, 2023 until July 6, 2023.

Based on these allegations, Thomas asserts claims for excessive use of force.

**A. Eighth Amendment and Excessive Use of Force**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and

decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.  Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id*. at 9-10.

Thomas' allegations implicate his right to be free from the use of excessive force.  But he fails to state a colorable Eighth Amendment claim because, while he describes actions of some defendants, he does not identify which officers allegedly tackled and restrained him when they knew he was suffering serious back pain and not resisting.  So I dismiss his excessive force claim without prejudice and with leave to amend.

### B.  Fourteenth Amendment Due Process in Disciplinary Hearings

To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995).  A prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.  In *Sandin*, the Supreme Court focused on three factors in determining that the

plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Id*. at 486-87.

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

"When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992). An inmate's right to present witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Prison officials "must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003). But an inmate has no right to cross-examine or confront witnesses in disciplinary hearings. *See Wolff*, 418 U.S. at 567-68.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." *Superintendent, Massachusetts Corr. Inst., Walpole v.*

*Hill*, 472 U.S. 445, 455 (1985).  But this standard does not apply when a prisoner alleges that a prison guard's report is false and retaliatory. *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997).

Inmates have "a constitutional right under the Due Process Clause of the Fourteenth Amendment to be permitted to examine documentary evidence for use in the prison disciplinary hearing." *Melnik v. Dzurenda*, 14 F.4th 981, 984 (9th Cir. 2021).

> If a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation.  With no access to the evidence that will be presented against him, a prisoner could neither build a defense nor develop arguments and evidence to contest the allegations at the disciplinary hearing.

*Id*. at 985.  "[A] prisoner's right to present a defense must extend to the preparation of a defense, including compiling evidence." *Id*. at 986.

Thomas alleges that grievance coordinator and disciplinary commissioner Southworth "refused to honor video footage" that would have shown that Thomas did not resist.  Thomas asked to view the video and Southworth told him that it did not exist.  It is unclear whether Thomas is trying to assert a claim that Southworth violated Thomas' due process rights during the disciplinary proceedings, perhaps by not permitting Thomas to view the evidence.  So I also give Thomas leave to amend to assert a claim that Southworth violated his due process rights.

**C.  First Amendment: Retaliation**

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69. A plaintiff who fails to allege a chilling effect may still state a claim if he alleges that he suffered some other harm that is more than minimal. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). More than minimum harms include the filing of a false disciplinary charge against a prisoner, placing him in administrative segregation, or interfering with his parole hearing. *Id*. at 1115.

At the end of his complaint, Thomas alleges, without elaboration, that the "incident" was in retaliation for his filing of an earlier civil rights complaint. But he does not describe which defendants took what specific actions in order to retaliate against him. I give Thomas leave to assert a retaliation claim.

**D. Leave to Amend**

Although I grant Thomas leave to amend, I do not grant him leave to amend in any way that he sees fit. Thomas has leave to amend to allege additional true facts to show that specific prison personnel used excessive force against him, violated his due process rights in his disciplinary proceedings, and/or retaliated against him for his protected conduct. I do not give Thomas leave to assert new claims.

If Thomas chooses to file an amended complaint, he is advised that an amended complaint replaces the complaint, so the amended complaint must be complete in itself. *See Hal*

8

*Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). This means that the amended complaint must contain all facts and claims and identify all defendants that he intends to sue. He must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Thomas must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights. He must file the amended complaint by October 25, 2024. If Thomas chooses not to file an amended complaint curing the stated deficiencies, I will dismiss this case without prejudice for failure to state a claim.

### III. CONCLUSION

I therefore order that Thomas' application to proceed *in forma pauperis* [ECF No. 1] without having to prepay the full filing fee is deferred.

I further order the Clerk of Court to detach and file the complaint [ECF No. 1-1].

I further order that the complaint is dismissed with leave to amend as set forth above.

I further order that, if Thomas chooses to file an amended complaint curing the deficiencies of (1) his Eighth Amendment excessive force claim; (2) his due process claim, if any, with respect to his disciplinary proceedings; and (3) his retaliation claim, if any, as outlined in this order, he must file the amended complaint by **October 25, 2024**.

I further order the Clerk to send to Thomas the approved form for filing a § 1983 complaint, with instructions. If Thomas chooses to file an amended complaint, he should use the approved form and write the words "First Amended" above the words "Civil Rights Complaint" in the caption.

I further order that, if Thomas fails to file an amended complaint curing the deficiencies of his claims by October 25, 2024, I will dismiss this action without prejudice for failure to state a claim.

DATED this 24th day of September, 2024.

                                                ANDREW P. GORDON
                                                UNITED STATES DISTRICT JUDGE